IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **MONICA LOTT** <br> 455 N. West St. <br> Lima, OH 45801 <br><br> Plaintiff, <br><br> v. <br><br><br> **JACOBS INDUSTRIAL SERVICES INC.,** <br> c/o Statutory Agent <br> CT Corporation System <br> 1300 East Ninth Street <br> Cleveland, OH 44114 <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO.: 3:16-cv-3088 <br><br> JUDGE <br><br> MAGISTRATE JUDGE <br><br><br> **Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Monica Lott ("Plaintiff") and proffers this Complaint for damages against Defendant Jacobs Industrial Services, Inc. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, and the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("Chapter 4111").

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

3. This Court's jurisdiction in the matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

4. Venue is proper pursuant to 28 U.S.C. §1391, due to the fact that Defendant operates a facility located in the Allen County in the Northern District of Ohio, where all of the events in question took place.

## THE PARTIES

5. Plaintiff is a natural person residing in Allen County, Ohio.

6. Defendant is a foreign Corporation registered to do business in Ohio and doing business in the Northern District of Ohio.

7. At all times relevant herein, Plaintiff was an employee of Defendant's as that term is defined in the FLSA and O.R.C. Chapter 4111.

8. At all times relevant all times relevant herein, Defendant was a covered employer as that term is defined in the FLSA and O.R.C. Chapter 4111.

9. At all times relevant to this action, Defendant was engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant's constituted an enterprise engaged in commerce within the meaning of the FLSA.

## FACTUAL BACKGROUND

10. Defendant Jacobs Industrial Services, Inc. is an international professional services company. Defendant maintains an office at the Potash Corporation, which is located in Lima, Allen County, Ohio, where Plaintiff was employed.

11. Plaintiff first began her employment with Defendant in the payroll department at the Lima, Ohio office on or around October 21, 2014.

12. Plaintiff's job duties included time keeping for "craft" employees, data entry, and reviewing and sending reports to clients.

13. Craft employees include all skilled trade positions such as, laborer, operators, boiler makers, carpenters, pipefitters, and others.

14. Throughout her employment, Plaintiff received positive feedback from her supervisor, Patty Glasco—Office Manager, and other employees.

15. Plaintiff received regular raises based on her work performance.

16. Plaintiff's direct supervisor, Ms. Glasco, directed Plaintiff's day-to-day job duties and assigned her tasks to complete throughout the day.

17. Defendant's craft employees that work at the Potash Corp. in Lima are required to clock-in and clock-out using a key card swipe attached to the office building gate.

18. In addition, the foremen tracks the hours worked for each craft employee and submits those hours to the payroll department.

19. Plaintiff is responsible for comparing the foremen's time sheets to the gate logs and determining if they match. If they do not match, Plaintiff asks Ms. Glasco what she would like done, in anything, to adjust the employee's hours.

20. In or around August, Plaintiff started noticing discrepancies between the foremen's time and the gate logs. Plaintiff noticed that the gate logs showed employees clocking in and out a few minutes early or a few minutes late.

21. Ms. Glasco instructed Plaintiff to deduct 15 minutes from the employee's pay if the clocked in late or clocked out early, but not if the employee clocked in early or clocked out late. The rounding always was in favor of the company and against the employee.

22. Around that time in August, an employee complained to Plaintiff that his hours were inaccurate. Plaintiff relayed the complaint to Ms. Glasco and Plaintiff also complained that the rounding was not allowed. Ms. Glasco told Plaintiff to continue deducting the time.

23. Several other employees also questioned the practice. Ms. Lott told the employees she had to do as her supervisor required but agreed that it was "not right" that this time was being deducted.

24. In or around mid-October, a pipefitter talked with Plaintiff about the issue and how it was not lawful to deduct their time. Plaintiff told the pipefitter that she agreed that the practice was unfair and unlawful. Plaintiff told the pipefitter that he should make a complaint to the union.

25. After the conversation with the pipefitter, Plaintiff went to Ms. Glasco and complained that deducting the 15 minutes was not right and they should not continue to do it. Further, she stated that employees continue to complain and she advised them to file with the union. Ms. Glasco told Plaintiff that those employees "don't have a leg to stand on" and that she should not complain about this again.

26. A grievance or complaint was filed with the union regarding the time deductions.

27. Shortly thereafter, on or about October 27, 2016, Ms. Glasco put Plaintiff on a 30-day performance improvement plan (PIP). The performance review came as a surprise because Plaintiff had never had any major issues with her work performance in the past.

28. On or about November 4, 2016, Ms. Glasco came down to Plaintiff's work space regarding an employee being paid incorrectly. Plaintiff said she would help with the pay issue. Ms. Glasco responded that Plaintiff should shut-up and hit Plaintiff in the face with her hand and pushed her back.

29. Plaintiff told Ms. Glasco not to put her hands on her again. Plaintiff was in shock at Ms. Glasco's behavior.

30. Ms. Glasco did not discuss the performance improvement plan with Plaintiff again. Plaintiff was never told that her work was an issue or not improving during this time.

31. A meeting between corporate and the union was set to occur on or about November 22, 2016 regarding the payroll issue.

32. Upon information and belief, corporate was going to investigate the rounding issues and speak with payroll employees.

33. On or about November 18, 2016 Plaintiff met with Ms. Glasco and the site manager, Shane Taylor.

34. Despite still being within the 30-day PIP timeline, Plaintiff was told that her services were no longer needed.

35. Plaintiff was terminated because she voiced her opposition to the deductions and rounding. Furthermore, Plaintiff was abruptly terminated before the corporate investigation because Ms. Glasco knew Plaintiff would tell the investigators that Ms. Glasco repeatedly instructed Plaintiff to make the unlawful deductions.

## COUNT I
### (FLSA, 29 U.S.C. § 215(a) - Retaliation)

46. All of the preceding paragraphs are realleged as if fully rewritten herein.

47. Plaintiff engaged in a protected activity when she made an internal complaint to her supervisor that Defendant's rounding pay practice was unlawful and constituted the stealing of time from Defendant's employees.

48. Defendant knew that Plaintiff engaged in such protected activity.

49. Plaintiff was terminated from Defendant on November 18, 2016 for the alleged reason of work performance.

50. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action against Plaintiff by terminating her employment.

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

52. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT II
### (R.C. § 4111.13 - Retaliation)

53. All of the preceding paragraphs are realleged as if fully rewritten herein.

54. Plaintiff in a protected activity when she made an internal complaint to her supervisor that Defendant's rounding pay practice was unlawful and constituted the stealing of time from Defendant's employees.

55. Defendant knew that Plaintiff engaged in such protected activity.

56. Plaintiff was terminated from Defendant on November 18, 2016 for the alleged reason of work performance.

57. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action against Plaintiff by terminating her employment.

58. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendant is liable.

59. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, front pay, compensatory damages, punitive damages, expert witness fees, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Greg R. Mansell*

Greg R. Mansell (0085197)
(*Greg@ MansellLawLLC.com*)
Carrie J. Dyer (0090539)
(*Carrie@MansellLawLLC.com*)
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (513) 826-9311
*Attorneys for Plaintiff Lott*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Greg R. Mansell*

Greg R. Mansell (0085197)

7